**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| NOETIC SPECIALTY INSURANCE COMPANY, 14280 Park Meadow Drive, Suite 300, Chantilly, VA 20151,<br><br>Plaintiff,<br><br>v.<br><br>HENRY SCHEIN, INC., 80 Baylis Road, Melville, NY 11747,<br><br>REGISTERED AGENT:<br>Corporation Service Company<br>251 Little Falls Drive<br>Wilmington, DE 19808,<br><br>and<br><br>HENRY SCHEIN MEDICAL SYSTEMS, INC., 760 Boardman-Canfield Road, Youngstown, OH 44512,<br><br>REGISTERED AGENT:<br>Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215,<br><br>Defendants. | Case No. 1:18-cv-1134 (AJT/TCB) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Noetic Specialty Insurance Company ("Noetic"), by and through its attorneys, seeks entry of judgment in its favor and against Defendants, Henry Schein, Inc. and Henry Schein Medical Systems, Inc. (collectively, "Henry Schein"), pursuant to 28 U.S.C. § 2201, *et seq.*, and in support thereof states as follows:

1

## NATURE OF THE ACTION

1. This is a declaratory judgment action, brought pursuant to 28 U.S.C. § 2201, *et seq.*, wherein Noetic seeks a judicial determination of its rights, duties, and obligations under a certain claims-made policy of insurance issued by Noetic to Henry Schein, Inc. In particular, Henry Schein seeks insurance coverage in connection with two lawsuits arising out of the opioid epidemic, which were filed by the following government entities: (1) Summit County, Ohio ("*Summit County*") (see May 29, 2018, *Summit County* (Redacted) Corrected Second Amended Complaint naming Henry Schein, a true and correct copy of which is attached hereto as "Exhibit A"); and (2) the City of Barberton, Ohio, and twenty other Ohio government entities ("*City of Barberton*"). (See July 3, 2018, *City of Barberton* (Redacted) Corrected Complaint naming Henry Schein, a true and correct copy of which is attached hereto as "Exhibit B").

2. Noetic issued to Henry Schein, Inc. a claims-made Products/Completed Operations Liability Policy, No. N17NY380032, effective for the period June 1, 2017 to June 1, 2018 (the "Noetic Policy"). (See the Noetic Policy, a true and correct copy of which is attached hereto as "Exhibit C," with premium information redacted).

3. Henry Schein has demanded insurance coverage from Noetic in connection with *Summit County* and *City of Barberton* (collectively, the "Underlying Government Entity Lawsuits"), which were filed by government entities seeking recovery of economic losses sustained in connection with Ohio's opioid epidemic.

4. The Noetic Policy does not provide coverage for the Underlying Government Entity Lawsuits for several reasons, including, but not limited to, the fact that the Noetic Policy expressly states that any duty to defend does not extend to lawsuits initiated by government entities, such as those at issue in this case. Because Noetic has no duty to defend Henry Schein

with respect to the Underlying Government Entity Lawsuits, Noetic also has no duty to indemnify Henry Schein in connection with those actions.

5. Accordingly, Noetic now seeks a judicial declaration that it owes Henry Schein no duty to defend or indemnify in connection with the Underlying Government Entity Lawsuits.

## THE PARTIES

6. Plaintiff Noetic is an insurance company organized and incorporated under the laws of the State of Vermont, with its principal place of business located in Chantilly, Virginia.

7. Defendant Henry Schein, Inc. is a corporation organized and incorporated under the laws of the State of Delaware, with its principal place of business located in Melville, New York.

8. Defendant Henry Schein Medical Systems, Inc. is a subsidiary of Henry Schein, Inc. Henry Schein Medical Systems, Inc. is a corporation organized and incorporated under the laws of the State of Ohio, with its principal place of business located in Youngstown, Ohio.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 2201. There is complete diversity of citizenship between the parties because Noetic and Henry Schein are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest, costs, and fees. Given the procedural and substantive complexity of the Underlying Government Entity Lawsuits, and the voluminous number of parties involved, defense costs alone are expected to exceed $75,000.

10. Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this insurance coverage dispute—*i.e.*,

Noetic's decision to deny Henry Schein's request for defense and indemnity in connection with the Underlying Government Entity Lawsuits—occurred in this judicial district.

<u>**THE UNDERLYING GOVERNMENT ENTITY LAWSUITS**</u>

  **A.**   **The Lawsuit Filed by Summit County, Ohio**

  11.   On May 29, 2018, Summit County, Ohio, filed the Second Amended Complaint in the *Summit County* action, which names Henry Schein as defendants. That lawsuit, captioned *The County of Summit, Ohio v. Purdue Pharma L.P., et al.*, Case No. 18-OP-45090 (N.D. Ohio), is part of the multidistrict litigation captioned *In Re National Prescription Opiate Litigation*, Case No. 1:17-md-02804 (N.D. Ohio), pending before Judge Dan Aaron Polster in the U.S. District Court for the Northern District of Ohio (the "Opioid MDL").

  **B.**   **The Lawsuit Filed by the City of Barberton, Ohio, and Twenty Other Ohio Government Entities**

  12.   On June 30, 2018, the City of Barberton, Ohio, and twenty other Ohio government entities filed the *City of Barberton* action, which names Henry Schein as defendants and makes nearly identical allegations as the Second Amended Complaint filed in *Summit County*. The *City of Barberton* action is captioned *City of Barberton, et al. v. Purdue Pharma L.P., et al.*, Case No. 18-OP-45090 (N.D. Ohio). *City of Barberton* is also part of the Opioid MDL, but is stayed pending the trial of three "bellwether" cases, one of which is *Summit County*.

  13.   On July 3, 2018, the operative, "corrected" Complaint was filed in *City of Barberton*.

  **C.**   **The Underlying Government Entity Lawsuits Allege That Henry Schein Contributed to the Opioid Epidemic and Caused the Government Plaintiffs to Incur Economic Loss**

  14.   The Underlying Government Entity Lawsuits name three categories of Defendants: a) opioid manufacturers; b) opioid distributors; and c) opioid retailers. (Ex. A at 15-

32, ¶¶ 63-128; Ex. B at 14-31, ¶¶ 60-125). The Underlying Government Entity Lawsuits classify Henry Schein as a "Distributor Defendant" and allege that, as a distributor of prescription opioids, Henry Schein is obligated to monitor, identify, report, and refuse to fill orders that are suspiciously large or frequent or otherwise might be diverted towards non-medical use. (Ex. A at 152-55, ¶¶ 510-18; Ex. B at 148-54, ¶¶ 510-18).

15. The Underlying Government Entity Lawsuits allege that Henry Schein negligently or intentionally failed to prevent diversion of prescription opioids. (Ex. A at 155, ¶ 518; Ex. B at 154, ¶ 518). In support of that assertion, the plaintiffs allege that Henry Schein has been the subject of "repeated disciplinary actions in Ohio and other states for its sale and/or distribution of dangerous drugs to persons or facilities not licensed or otherwise authorized to possess such drugs," including a cease and desist letter from the State of Ohio Board of Pharmacy in November of 1998. (Ex. A at 178-79, ¶¶ 588-92; Ex. B at 177-78, ¶¶ 588-92).

16. Henry Schein also allegedly distributed prescription opioids to doctors in plaintiffs' communities who were later indicted for unlawful prescribing practices. (Ex. A at 211-12, ¶¶ 706-07; Ex. B at 210-11, ¶¶ 706-07).

17. The Underlying Government Entity Lawsuits further allege that Henry Schein and other defendants conspired to, and did in fact, fill suspicious orders for prescription opioids without reporting them to the U.S. Drug Enforcement Administration ("DEA"). (Ex. A at 158-67, ¶¶ 526-53, 229-31, ¶¶ 760-66; Ex. B at 157-65, ¶¶ 526-53, 228-29, ¶¶ 760-66). The alleged purpose of this conspiracy was to mislead the DEA into increasing the production quota for prescription opioids based on seemingly legitimate medical demand, thus allowing Henry Schein and others to profit from "artificially high" prescription opioid sales. *Id.*

18. The Underlying Government Entity Lawsuits allege that Henry Schein's failure to prevent diversion of prescription opioids has caused the underlying plaintiffs to incur extraordinary costs in providing public health services to address the opioid health epidemic. A sampling of such allegations includes the following:

> 20. Defendants' conduct in promoting opioid use, addiction, abuse, overdose and death has had severe and far-reaching public health, social services, and criminal justice consequences … The costs are borne by Plaintiffs and other governmental entities … [and] include the handling of emergency responses to overdoses, providing addiction treatment, handling opioid-related investigations, arrests, adjudications, and incarceration, treating opioid-addicted newborns … burying the dead, and placing thousands of children in foster care placements, among others.
>
> 21. The burdens imposed on Plaintiffs are not the normal or typical burdens of government programs and services. … Governmental entities, and the services they provide their citizens, have been strained to the breaking point by this public health crisis.

(Ex. A at 7-8, ¶¶ 20-21; Ex. B at 6-7, ¶¶ 20-21).

\*\*\*\*

> 1028. Defendants' misconduct alleged in this case does not concern a discrete event or discrete emergency of the sort a political subdivision would reasonably expect to occur, and is not part of the normal and expected costs of a local government's existence. Plaintiffs allege wrongful acts which are neither discrete nor of the sort a local government can reasonably expect.
>
> 1029. Plaintiffs have incurred expenditures for special programs over and above Plaintiffs' ordinary public services.

(Ex. A at 311, ¶¶ 1028-29; Ex. B at 309-10, ¶¶ 1025-26).

19. The Underlying Government Entity Lawsuits assert six causes of action against Henry Schein, as follows:

**Fifth Claim for Relief**          Statutory Public Nuisance

| | |
|---|---|
| **Sixth Claim for Relief** | Common Law Public Nuisance |
| **Seventh Claim for Relief** | Negligence |
| **Ninth Claim for Relief** | Injury Through Criminal Acts (R.C. 2307.60) |
| **Tenth Claim for Relief** | Unjust Enrichment |
| **Eleventh Claim for Relief** | Civil Conspiracy |

(Ex. A at 300-18, ¶¶ 974-1071, 324-30, ¶¶ 1090-1134; Ex. B at 299-317, ¶¶ 974-1068, 322-29, ¶¶ 1087-1133).

20. The Underlying Government Entity Lawsuits seek "economic damages" for the costs of providing the aforementioned public health services to residents of the underlying plaintiffs' communities. (Ex. A at 15, ¶ 59, 285-86; Ex. B at 13, ¶ 56, 284-85). Additionally, the Underlying Government Entity Lawsuits seek abatement of the opioid epidemic, punitive and exemplary damages, treble damages, civil penalties, equitable and injunctive relief, restitution, disgorgement, attorneys' fees and costs, and pre- and post-judgment interest. (Ex. A at 331, ¶ 1137; Ex. B at 329, ¶ 1134).

**D.  Henry Schein Tenders the Underlying Government Entity Lawsuits to Noetic**

21. On May 30, 2018, Henry Schein tendered *Summit County* to Noetic, seeking defense and indemnity under the Noetic Policy. (See Henry Schein's May 30, 2018 correspondence, a true and correct copy of which is attached hereto as "Exhibit D").

22. On July 9, 2018, Henry Schein tendered *City of Barberton* to Noetic, seeking defense and indemnity under the Noetic Policy. (See Henry Schein's July 9, 2018 correspondence, a true and correct copy of which is attached hereto as "Exhibit E").

  **E.**  **The Noetic Policy Issued to Henry Schein, Inc.**

  23. The Noetic Policy was issued to Henry Schein, Inc. and provides "claims made" coverage for the period June 1, 2017 to June 1, 2018. The Noetic Policy provides Products/Completed Operations Liability coverage with limits of $10,000,000 per occurrence, which limits are eroded by defense expenses.

  24. The Noetic Policy provides, in relevant part, as follows:

> **SECTION I - COVERAGES**
> **A. PRODUCTS/COMPLETED OPERATIONS BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
>  **1. Insuring Agreement**
>
>   **a.** We will pay those sums, in excess of the **Deductible**, that the **Insured** becomes legally obligated to pay as **Damages** because of **Bodily Injury** or **Property Damage** to which this insurance applies. This insurance applies only if:
>
>    **(1)** the **Bodily Injury** or **Property Damage** is included within the **Products/Completed Operations Hazard**;
>
>    **(2)** the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place in the **Coverage Territory**;
>
>    **(3)** the **Bodily Injury** or **Property Damage** did not occur before the **Retroactive Date**, if any, shown in the Declarations or after the end of the policy period, provided that, any **Bodily Injury** or **Property Damage** that commences before the **Retroactive Date** and continues after the **Retroactive Date** will be deemed to have occurred before the **Retroactive Date**;
>
>    **(4)** a **Claim** because of **Bodily Injury** or **Property Damage** is first made against any **Insured** during the policy period or any Extended Reporting Period and is reported to us as soon as reasonably possible; and

  **(5)**  the **Claim** did not arise out of a **Serious Adverse Event** that any **Insured** knew about prior to the effective date of this policy, but did not report to us or another insurer prior to such effective date, or disclose on the Application for this insurance.

****

 **3. Defense Expenses**

  **a.** We will have the right and duty to defend the **Insured** against any **Claim** for **Bodily Injury** or **Property Damage** to which this insurance applies and to control the defense. For any **Claim** that is not a **Suit**, the duty to defend does not require us to retain counsel.

  **b.** We will pay **Defense Expenses** with respect to any **Claim** that we defend. These payments will contribute to the exhaustion of the **Deductible** and, upon exhaustion, will then reduce the limits of insurance. …

****

  **d.** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of **Judgments**, **Settlements**, or **Defense Expenses**.

****

(Ex. C at 1-2 of 19).

  25. The Noetic Policy contains the following relevant definitions:

**SECTION VII - DEFINITIONS**

****

 **3. Bodily Injury** means:

  **a.** Physical harm, sickness, or disease sustained by a person, including death resulting from any of these at any time; and

9

    **b.**    Any mental anguish, mental injury, disability, shock, fright or humiliation sustained by that person or by any relative of that person as a result of such physical harm, sickness, disease, or death.

**4. Claim** means:

    **a.**    Written notice received by any **Insured**, from any party, demanding money, services, or other compensation resulting from an **Occurrence** or stating that it is the intention of such party to hold any **Insured** responsible for an **Occurrence**; or

    **b.**    a **Suit**.

\*\*\*\*

**12. Damages**

    **a.**    Means money:

        **(1)**    awarded in a **Suit**; or

        **(2)**    the payment of which an **Insured** is obligated to make under a binding **Settlement**; …

\*\*\*\*

    **d.**    **Damages** does not include:

        **(1)**    fines or penalties imposed by law, regulation, or regulatory authority;

        **(2)**    taxes; or

        **(3)**    the return or restitution of fees, profits or charges for **Your Work** or **Your Product**; or

        **(4)**    fines, penalties or monies demanded by or awarded to a government in an action to recover its costs for health care and treatment.

\*\*\*\*

**15. Defense Expenses** means the reasonable and necessary costs and expenses of investigation, adjustment, appraisal,

defense and appeal paid or incurred by the **Insured** or by us in respect of a **Claim** or **Suit**. …

\*\*\*\*

34. **Judgment** means the official decision of a court or administrative tribunal that finally adjudicates the respective rights and claims of the parties to a **Suit**.

\*\*\*\*

43. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*\*

46. **Products/Completed Operations Hazard:**

   a.   Includes:

   **(1)** **Bodily Injury** and **Property Damage** occurring away from premises you own or rent and arising out of **Your Work** or **Your Product**; …

\*\*\*\*

49. **Property Damage** means:

   a.   physical injury to tangible property other than **Your Product** or **Your Work**; or

   b.   loss of use of tangible property, other than **Your Product** or **Your Work** that:

   **(1)** has been physically injured; or

   **(2)** incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous and such property cannot be restored to use solely by the repair, replacement, adjustment or removal of **Your Product** or **Your Work**.
   …

\*\*\*\*

11

814331v.1

>    52. **Serious Adverse Event** means an undesirable experience associated with **Your Product** where the outcome to the patient:
>
>        a.   is life threatening;
>
>        b.   is death;
>
>        c.   required hospitalization (initial or prolonged);
>
>        d.   is disability or permanent damage;
>
>        e.   is a congenital anomaly or birth defect;
>
>        f.   required intervention to prevent permanent impairment or damage; or
>
>        g.   required medical intervention to prevent one of the outcomes **a.** through **f.** immediately above.
>
>    53. **Settlement** means the resolution of a **Claim**. A **Judgment** is not a **Settlement**.
>
>                                          ****
>
>    58. **Suit** means a civil proceeding in which **Bodily Injury** or **Property Damage** to which this insurance applies are alleged. …
>
>                                          ****
>
>        b.   **Suit** does not include any action initiated by a government entity with the exception of **Coroner's Inquests**.
>
>                                          ****

(Ex. C at 13-18 of 19).

    **F.**    **Noetic's Response to Henry Schein's Tender of the Underlying Government Entity Lawsuits**

    26.    On June 22, 2018, Noetic responded to Henry Schein's tender of *Summit County* by disclaiming coverage. (See Noetic's June 22, 2018 correspondence, a true and correct copy of which is attached hereto as "Exhibit F").

    27.    In its coverage disclaimer, Noetic explained that the Noetic Policy expressly disclaims any duty to retain counsel to defend Henry Schein against government entity lawsuits

12

such as *Summit County*, a risk outside the scope of the policy's coverage. Noetic's coverage disclaimer further explained that, absent a duty to retain defense counsel, there is no possibility that Noetic could owe a duty to indemnify the damages at issue in the tendered civil proceedings.

28. On August 2, 2018, Henry Schein responded to Noetic's coverage disclaimer with respect to *Summit County*, asserting that "[Henry Schein] disagree[s] with [Noetic's] declination of coverage." (See Henry Schein's August 2, 2018 correspondence, a true and correct copy of which is attached hereto as "Exhibit G"). Henry Schein took the position that, despite the Noetic Policy language expressly disclaiming any duty to retain counsel to defend against lawsuits initiated by government entities, Noetic "is nonetheless obligated to defend Henry Schein … and to pay for associated Defense Expenses and Settlements." *Id.*

29. On September 6, 2018, Noetic responded to Henry Schein with respect to the Underlying Government Entity Lawsuits, reiterating that the Noetic policy does not provide coverage for lawsuits filed by government entities, such as *Summit County* and *City of Barberton*. Noetic further explained that, because the plaintiffs to the Underlying Government Entity Lawsuits are government entities, Noetic has no coverage obligations with respect to those actions. Noetic also raised additional coverage defenses and reserved its right to deny coverage for the Underlying Government Entity Lawsuits on those bases. (See Noetic's September 6, 2018 correspondence, a true and correct copy of which is attached hereto as "Exhibit H").

## COUNT I: DECLARATORY JUDGMENT

**Noetic Owes No Duty to Defend or Indemnify Henry Schein Because the Underlying Government Entity Lawsuits Are Not "Suits"**

30. Noetic repeats and incorporates by reference herein the allegations of Paragraphs 1-29 of this Complaint, as if set forth fully herein.

13

31. The Noetic Policy expressly disclaims any duty to defend Henry Schein against a "**Claim** that is not a **Suit**," within the defined meanings of the Noetic Policy.

32. The Noetic Policy's "Suit" definition expressly does not include "any action initiated by a government entity."

33. The Underlying Government Entity Lawsuits are actions which were initiated solely by Ohio government entities.

34. The Underlying Government Entity Lawsuits are not "Suits," within the meaning of the Noetic Policy.

35. Therefore, Noetic owes no duty to defend Henry Schein against the Underlying Government Entity Lawsuits.

36. Therefore, Noetic likewise owes no duty to indemnify Henry Schein in connection with the Underlying Government Entity Lawsuits.

## COUNT II: DECLARATORY JUDGMENT

**Noetic Owes No Duty to Defend or Indemnify Henry Schein Because the Underlying Government Entity Lawsuits Do Not Satisfy the Noetic Policy's Insuring Agreement**

37. Noetic repeats and incorporates by reference herein the allegations of Paragraphs 1-36 of this Complaint, as if set forth fully herein.

38. The Underlying Government Entity Lawsuits were filed by government entities and are not "Suits" that could qualify for coverage under the Noetic Policy.

39. Nevertheless, in the alternative, even to the extent that the Underlying Government Lawsuits otherwise could constitute "Claims" under the Noetic Policy, the Underlying Government Entity Lawsuits do not satisfy the Noetic Policy's insuring agreement and do not impose coverage obligations on Noetic.

40. Subject to its terms, conditions, and exclusions, the insuring agreement obligates Noetic to defend "any Claim for Bodily Injury or Property Damage" and then to "pay those sums … that the Insured becomes legally obligated to pay as Damages[.]"

41. The Underlying Government Entity Lawsuits seek government recoupment of expenses incurred to address a public health crisis.  Even to the extent these claims could arguably be characterized as claims "for Bodily Injury or Property Damage," the government plaintiffs' expenditures are not covered "Damages" under the Noetic Policy.

42. The Noetic Policy provides that "Damages" does not include "fines, penalties or monies demanded by or awarded to a government in an action to recover its costs for health care and treatment."

43. The Underlying Government Entity Lawsuits seek economic damages for expenditures in responding to a "public health crisis," and therefore allege loss that is outside the "Damages" covered by the Noetic Policy.

44. Accordingly, Noetic has no obligation to defend or indemnify Henry Schein in connection with the Underlying Government Entity Lawsuits.

## REQUEST FOR RELIEF

WHEREFORE, Noetic respectfully requests that this Court:

(1) Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Noetic Policy and the Underlying Government Entity Lawsuits;

(2) Declare that Noetic Specialty Insurance Company has no duty to defend or indemnify Henry Schein in connection with the Underlying Government Entity Lawsuits because those actions were filed by government entities and are not "Suits" under the Noetic Policy;

(3) To the extent that the Underlying Government Entity Lawsuits are "Suits" or otherwise constitute "Claims" under the Noetic Policy, declare that Noetic Specialty Insurance Company has no duty to defend or indemnify Henry Schein in connection with the Underlying Government Entity Lawsuits because those actions do not seek covered "Damages"; and

(4) Grant such other and further relief as the Court deems just and proper.

DATED this 6th day of September, 2018.    Respectfully submitted,

    /s/ Eric P. Burns
Eric P. Burns, VSB #76554
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP
8444 Westpark Drive, Suite 510
McLean, VA 22102
703.245.9300 (telephone)
703.245.9301 (facsimile)
eric.burns@wilsonelser.com

Adam H. Fleischer
(application for *pro hac vice* admission pending)
Agelo L. Reppas
(application for *pro hac vice* admission pending)
BATESCAREY LLP
191 North Wacker, Suite 2400
Chicago, IL 60606
312.762.3100 (telephone)
312.762.3200 (facsimile)
afleischer@batescarey.com
areppas@batescarey.com

*Attorneys for Plaintiff Noetic Specialty Insurance Company*